UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DITAINIA ADAMS,

        Petitioner,

v.                                              CASE NO. 09-13123
                                                HONORABLE GEORGE CARAM STEEH
SHIRLEE HARRY,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION
## BUT GRANTING A CERTIFICATE OF APPEALABILITY

Petitioner Ditainia Adams has filed a *pro se* habeas corpus petition under 28 U.S.C. §
2254. Petitioner alleges that there was insufficient evidence at trial to support his conviction for
assault with intent to commit murder. The Court agrees with Respondent, who argues in an
answer to the petition that the state court's decision was objectively reasonable. Accordingly,
the habeas petition will be denied.

### I. Background

### A. The Trial Testimony

Petitioner and his co-defendant, Arthur Horton, were charged in Monroe County,
Michigan with one count of assault with intent to commit murder. The two defendants were
tried jointly in Monroe County Circuit Court. The charge against them arose from allegations
that they severely beat James Deaton in the city of Monroe on July 16, 2002. Deaton attempted
to make a cocaine purchase early that morning and was subsequently assaulted by a group of

men.  The assault occurred after Petitioner, Arthur Horton, James Deaton, and Ryran Young,[1] also known as "Scoogie," walked between two houses on Almyra Street.  According to eyewitness Calvin Johnson, several people struck Deaton with their fists, causing him to fall.  Horton then dropped a brick on Deaton.  Johnson looked in Deaton's wallet, but found nothing in it and threw the wallet down the drain.  Patricia Stamback and Kai Hudson observed Deaton after the assault.  He was moaning and bleeding from the mouth, and he looked like he had been beat up.

After everyone left the area, Deaton apparently got up and walked down the street for half a block.  Petitioner, Arthur Horton, and Ryran Young then chased Deaton and attacked him a second time.  The police found Deaton lying unconscious on the sidewalk near two pieces of concrete or stone.  One piece of concrete was approximately 12" by 12" and the other piece was about the size of a brick.  Blood on those items matched Deaton's blood, and there was a large amount of blood near his head and torso.  The police noticed droplets of blood leading back along the sidewalk, and they found a large puddle of blood, as well as the neck of a broken beer bottle with blood on it, in the area between or behind the two houses.

Kai Hudson testified that she thought Deaton was dead after the second attack.  Deaton survived, but he testified at trial that he was hospitalized for almost two months after the attacks.  His top teeth were knocked out, his chin was split in half, his jaw was broken, his sinuses were crushed, his skull was fractured in eight places, his speech and sense of balance were impaired, and he was partially paralyzed as a result of the incident.

_____

[1] Petitioner refers to this person as Ryan Young, but the transcript of trial indicates that Mr. Young's first name is Ryran.  For the sake of consistency, the Court has adopted the spelling used in the transcript.

Petitioner did not testify or present any witnesses. His defense was that there was no evidence that he did anything on the night in question.

Co-defendant Arthur Horton produced two police witnesses, who interviewed Calvin Johnson after the crime. According to retired detective Henry Webb, Johnson claimed one week after the crime that Ryran Young and one other person hit James Deaton in the head with a brick. Johnson did not mention Arthur Horton in his statement to Detective Webb, but he was extremely scared at the time and hesitant about speaking with the detective.

The other detective, Brett Ansel, testified that he interviewed Calvin Johnson on October 27, 2003, and on November 3, 2003. During the first interview, Johnson named a number of individuals who were present during the assault behind the houses, but he did not know who picked up the rock. During the second interview, Johnson stated that Ryran Young had picked up the rock. On cross-examination by the prosecutor, Detective Ansel testified that Johnson also told him that Arthur Horton had used both hands to lift a large brick over his head during the first assault and dropped the rock on Deaton's head. Horton then laughed.

On June 8, 2004, the jury found Petitioner guilty of assault with intent to commit murder, Mich. Comp. Laws § 750.83.[2] The trial court sentenced Petitioner as a habitual offender to imprisonment for fourteen years, three months, to thirty years with 266 days of credit for time served.

## B. The Appeals and Habeas Petition

Petitioner raised his sufficiency-of-the evidence claim in an appeal of right. The

---

[2] Arthur Horton requested jury instructions on lesser-included offenses and was found guilty of assault with intent to commit great bodily harm less than murder. Petitioner declined to have the jury instructed on lesser-included offenses, and he was found guilty as charged.

Michigan Court of Appeals found no merit in the claim and affirmed Petitioner's conviction in an unpublished, *per curiam* opinion. *See People v. Adams*, No. 257313, 2005 WL 3235603 (Mich. Ct. App. Dec. 1, 2005). On May 30, 2006, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. *See People v. Adams*, 714 N.W.2d 314 (Mich. 2006) (table).

Petitioner raised several new issues in a motion for relief from judgment filed on August 21, 2007. The trial court denied his motion, and the Michigan Court of Appeals denied leave to appeal the trial court's decision on the ground that Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Adams*, No. 287540 (Mich. Ct. App. Feb. 25, 2009). On September 28, 2009, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Adams*, 772 N.W.2d 393 (Mich. 2009) (table).

Meanwhile, Petitioner filed his habeas corpus petition on August 7, 2009. His sole argument is that there was insufficient evidence to support his conviction. The Michigan Court of Appeals concluded on review of this claim that a rational trier of fact could find Petitioner guilty of the assault beyond a reasonable doubt. Respondent argues that the Court of Appeals acted reasonably when it concluded that the evidence was sufficient.

## II. Standard of Review

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, habeas petitioners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

Courts must review a state court's sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA. *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010) (citing *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). Relief may be granted only if the state appellate court unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979). *Id*. When deciding whether the state court's determination was "objectively unreasonable," a reviewing court first asks whether the evidence was sufficient to convict under *Jackson*. *Id*. If it was, that is the end of the inquiry. *Id*. If the evidence was insufficient to convict, a reviewing court must "apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt. The law therefore 'commands deference at two levels.'" *Id*. (quoting *Tucker*, 541 F.3d at

656).

## III.  Discussion

Petitioner argues that the evidence adduced at trial was insufficient to support the jury's

verdict.  According to him, there was absolutely no evidence that he participated in the assault or

that he aided and abetted anyone else in assaulting Mr. Deaton.  At worst, argues Petitioner, he

was merely present when the assault occurred.

### A.  Clearly Established Federal Law

"[T]he Due Process Clause protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  After *Winship*, the critical question on

review of the sufficiency of evidence supporting a criminal conviction is

> whether, after viewing the evidence in the light most favorable to the prosecution,
> *any* rational trier of fact could have found the essential elements of the crime
> beyond a reasonable doubt.  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the testimony, to
> weigh the evidence, and to draw reasonable inferences from basic facts to
> ultimate facts.

*Jackson*, 443 U.S. at 319 (internal citation omitted) (emphasis in original).

Courts must apply the *Jackson* standard "with explicit reference to the substantive

elements of the criminal offense as defined by state law."  *Id*. at 324.n.16.  The elements of

assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, (3)

which, if successful, would make the killing murder."  *People v. Lugo*, 542 N.W.2d 921, 927

(Mich. Ct. App. 1995).  "Intent may be inferred from all the facts and circumstances," *id*., and "a

court may sustain a conviction based upon nothing more than circumstantial evidence," *Stewart*,

595 F.3d at 656 (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)).

6

The prosecutor's theory was that Petitioner aided and abetted Arthur Horton in assaulting James Deaton. In Michigan, one who aids and abets a crime may be prosecuted, tried, and upon conviction, punished as if he directly committed the offense. Mich. Comp. Laws § 767.39. Aiding and abetting encompasses "all forms of assistance rendered to the perpetrator of the crime" and "comprehends all words or deeds which may support, encourage or incite the commission of a crime." *Stewart*, 595 F.3d at 653 (quoting *People v. Palmer*, 220 N.W.2d 393, 396-97 (Mich. 1974)). "To be found guilty as an aider and abettor, 'the amount of advice, aid or encouragement is not material if it had the effect of inducing the commission of the crime.'" *Id.* (quoting *Palmer*, 220 N.W.2d at 297). The prosecutor must show that the defendant intended to commit the crime or knew, at the time he gave aid and encouragement, that the principal intended to commit the crime. *People v. Robinson*, 715 N.W.2d 44, 47-48 (Mich. 2006) (quoting *People v. Moore*, 679 N.W.2d 41 (Mich. 2004)).

## B. Application

The Michigan Court of Appeals summarized the evidence at trial as follows:

> During trial, the prosecution presented evidence to prove that defendant participated in two attacks on James Deaton that left him severely injured. Kai Hudson testified that defendant accompanied Deaton between two homes on Almyra Avenue in Monroe, Michigan and that, subsequently, she heard noises like somebody was being hit. Following the attack, defendant and others emerged from the area where Hudson saw Deaton lying injured on the ground. Hudson also identified defendant as one of the individuals who later ran toward Deaton and attacked him in a second assault as Deaton was stumbling down Almyra. Another witness, Calvin Johnson, testified that defendant was in the area on the night of the attacks on Deaton.

*Adams*, 2005 WL 3235603, at *1.

This summary of the evidence is supported by the record. *See* Tr. June 7, 2004, at 152-75, 190). However, as Petitioner correctly points out, Calvin Johnson also testified that

Petitioner walked away after the drug transaction and was not present during the actual assaults on Deaton. (*Id*. at 185, 190). And Kai Hudson admitted that she did not see the beating between the houses. (*Id*. at 158, 173). Nor did she see what happened after Petitioner and Arthur Horton chased Deaton down the street. (*Id*. at 163-64.)[3]

Patricia Stamback testified that three men ran after the victim as he walked down the street, but she claimed that she did not know whether Petitioner or Arthur Horton were two of the three men. (*Id*. at 146-49.) Deaton himself had little memory of the incident. He could recall seeing Arthur Horton at the scene, but he did not remember being struck, and he was unable to say whether Horton had hit him. (*Id*. at 200-02.)

Despite these weaknesses in the State's case, Ms. Stamback admitted to informing a detective before trial that Petitioner and Arthur Horton were two of the three men who ran toward the victim and attacked him. (*Id*. at 150.) And Kai Hudson, who knew Petitioner, admitted to having told a detective that Petitioner and Horton participated in the second assault on Deaton. (*Id*. at 166.) Although the jury was not permitted to consider Stamback's and Hudson's prior statements as substantive evidence (Tr. June 8, 2004, at 282-83), a reviewing court must consider all the evidence admitted by the trial court, even if the evidence was admitted erroneously. *McDaniel v. Brown*, __ U.S. __, __, 130 S. Ct. 665, 672 (2010) (*per curiam* opinion quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)). Furthermore,

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the

---

[3] Ms. Hudson testified at first that Petitioner, Horton, and Ryran Young beat up the victim on the sidewalk, but then she conceded that she did not see the actual beating and merely assumed that the defendants beat up the victim. (*Id.* at 169-70, 173-74.)

province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

A rational trier of fact could have concluded from the evidence that Petitioner was present during the first assault and that he subsequently joined Arthur Horton in chasing James Deaton as Deaton walked down the street. A rational factfinder could have inferred that Petitioner then encouraged and assisted Horton in assaulting Deaton to "finish him off," as the prosecutor claimed. The manner of attack, the physical evidence, and the extent of the injuries were strong indications that Petitioner was not merely present, but that he assisted or supported Horton and that he intended to kill Deaton or knew at the time that Horton intended to kill Deaton. Had Deaton died, the killing would have been murder.

The trial court opined, when ruling on Petitioner's mid-trial motion for summary judgment, that the witnesses obviously had selective memories. The trial court did not "for one second" believe Calvin Johnson's testimony that Petitioner was not present during the assaults. The court noted that Kai Hudson placed Petitioner there and that she also testified Petitioner ran toward Deaton immediately before Deaton was assaulted a second time. (Tr. June 7, 2004, at 211.) The jury could have viewed the evidence and witnesses similarly and reached the same conclusions. The jury also could have concluded that any equivocation by witnesses at trial was not as credible as their prior statements to the police.

The Court therefore concludes that the evidence was sufficient to sustain Petitioner's conviction. In reaching this conclusion, the Court notes that "the *Jackson* inquiry does not focus

on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Given the strength of the circumstantial evidence, the jury made a rational decision to convict Petitioner as charged.

### IV. Conclusion

The state appellate court's adjudication of Petitioner's claim did not result in a unreasonable determination of the facts or in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, the petition for a writ of habeas corpus [Dkt.#1, Aug. 7, 2009] is **DENIED**.

The issue, however, "warrant[s] encouragement to proceed further." *Banks v. Dretke*, 540 U.S. 668, 674 (2004). Accordingly a certificate of appealability may issue. Petitioner may proceed *informa pauperis* on appeal without further authorization because he was permitted to proceed without prepayment of the filing fee in this Court. Fed. R. App. P. 24(a)(3).

Dated: May 6, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 6, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk